**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Joyce Bruer,<br><br>    Plaintiff,<br><br>v.<br><br>Phillips Law Group PC, *et al.*,<br><br>    Defendants. | No. CV-18-01843-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Ritsema and Lyon, P.C.'s ("Ritsema") Motion to Dismiss (Doc. 54, Mot.), to which *pro se* Plaintiff Jane Joyce Bruer filed a Response (Doc. 74, Resp.) and Defendant filed a Reply (Doc. 78, Reply).

**I.  BACKGROUND**

Plaintiff was terminated from her employment with Phillips Law Group ("PLG") in June 2017, after which she filed suit against several Defendants. (Doc. 44, Am. Compl. ¶ 228.) At issue here are the three Arizona state law claims that Plaintiff brought against Defendant Ritsema for breach of good faith and fair dealing, invasion of privacy, and breach of fiduciary duty. (Am. Compl. ¶¶ 564–653.)

Several months before her termination, Plaintiff suffered a work injury to her right knee. (Am. Compl. ¶ 252.) She filed an injury report, and a workers' compensation claim was opened with PLG's insurance carrier, Defendant Sedgwick Claims Management Services ("Sedgwick"). (Am. Compl. ¶ 257.) When Plaintiff was terminated soon after, Sedgwick closed her claim. (Am. Compl. ¶ 258.) Plaintiff believed she was entitled to

1  compensation and thus filed a request for a hearing with the Industrial Commission of
2  Arizona. (Am. Compl. ¶ 260.)

3  Defendant Ritsema, a law firm, represented PLG and Sedgwick under the workers'
4  compensation policy held by PLG and adjusted by Sedgwick. (Doc. 50, Ritsema Answ. ¶
5  257.) Plaintiff alleges that an attorney at Ritsema refused to produce Plaintiff's personnel
6  file, which Plaintiff needed for her hearing before the Industrial Commission. (Am. Compl.
7  ¶ 259.) Plaintiff filed a motion to compel production of her file with the Industrial
8  Commission and later received it from Defendant, but alleges that Defendant withheld
9  several documents from her file. (Am. Compl. ¶¶ 264–70.) Plaintiff requested additional
10 documents several times but alleged that Defendant "continuously and deliberately used
11 dilatory tactics to stifle and frustrate [her] case momentum." (Am. Compl. ¶ 277.) Plaintiff
12 also alleges at various points in her Complaint that Defendant attorneys lied about their
13 knowledge of documents pertaining to Plaintiff's case before the Industrial Commission,
14 lied in answers to interrogatories, mispresented Plaintiff's average monthly wage on the
15 employer's required injury report, and "lied or misrepresented information to the
16 [Industrial Commission ALJ]." (Am. Compl. ¶¶ 340–356.)

17 Further, Plaintiff alleges that Defendant "caused an unsecure .pdf file, with many
18 pages containing the Plaintiff's social security number, address, phone number, date of
19 birth and or account number, without first applying required redactions, to be transmitted
20 via the internet without password protection." (Am. Compl. ¶ 603.) Defendant admits that
21 it emailed the file in the course of representing its client during Plaintiff's workers'
22 compensation claim and subsequent Industrial Commission proceeding. (Mot. at 3.) But
23 Defendant only sent the information to Plaintiff's own email address. (Mot. at 3.) It is this
24 transmission of her information to her own email account that Plaintiff relies upon for her
25 invasion of privacy claim. (Am. Compl. ¶¶ 601–35.) Additionally, Plaintiff alleges that
26 Defendant breached its fiduciary duty to her by sending her information via email. (Am.
27 Compl. ¶¶ 636–53.)

28

## II. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Breach of Good Faith and Fair Dealing

Plaintiff's first claim against Defendant is based on Defendant's alleged hesitance to produce Plaintiff's personnel file and its allegedly false statements made to the Industrial Commission. (Am. Compl. ¶¶ 564–600.) Defendant moves to dismiss this claim for breach of good faith and fair dealing on the basis that Arizona does not recognize such a cause of action against an insurer's attorney. (Mot. at 4.) Defendant asserts that Plaintiff can bring this claim only against her insurer—not the law firm that represents that insurer—because

"it is the relationship between the insurer and insured as defined by the terms of the policy and the implied covenant of good faith and fair dealing that allows for a cause of action of bad faith." (Mot. at 4.) And while Defendant acknowledges that "[t]his relationship can be extended to third-parties," it maintains that "Arizona has yet to extend this obligation to the insurer's attorneys." (Mot. at 4.)

In response, Plaintiff argues that Defendant acted as Sedgwick's agent and thus entered into a semi-contractual relationship with Plaintiff that could give rise to a claim for breach of good faith and fair dealing. (Resp. at 5.) The part of Plaintiff's argument that discusses the covenant of good faith and fair dealing in contracts is ineffective here, as Plaintiff never entered into a contract with Defendant Ritsema. Under Arizona law, the covenant of good faith and fair dealing is implied in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). Plaintiff therefore may be able to sustain this claim against Defendants American Family and Sedgwick, assuming her insurance policies constitute contracts with those Defendants. But, according to the Complaint, Plaintiff and Defendant Ritsema have no contractual relationship.

Plaintiff's only remaining argument appears to be that Defendant's special role as "the sole point of communication and correspondence between [Plaintiff and insurer]" gave rise to a relationship that mirrors that of two parties to a contract. (Resp. at 5.) And while Plaintiff cites several California state court opinions that use a balancing test to determine whether an attorney may be liable for bad faith in actions taken against a client's opponent, it is unclear whether these bad faith claims are related to Arizona's conception of the implied covenant of good faith and fair dealing, let alone whether the relationship between Plaintiff and Defendant could plausibly give rise to enforcement of that covenant. (Resp. at 6.) Further, Defendant asserts that Arizona has never recognized such a claim, and the Court finds no cases that would support a claim for breach of the covenant of good faith and fair dealing against an attorney who represents a plaintiff's opponent in a workers' compensation suit or any other proceeding. Thus, the Court will dismiss Plaintiff's claim.

### B.  Invasion of Privacy

The Court will also dismiss Plaintiff's Arizona state law claim against Defendant for invasion of privacy. Arizona recognizes a cause of action for invasion of privacy when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs" and that intrusion "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Here, Plaintiff does not take issue with Defendant intruding upon her privacy in order to obtain her personal information. Rather, both parties agree that Plaintiff knew Defendant possessed that information and was entitled to use it during the course of Plaintiff's workers' compensation dispute. (Am. Compl. ¶ 608; Mot. at 6.) Plaintiff objects only to the method by which Defendant transmitted her files—sending them to Plaintiff's personal email account in an unsecured format. Plaintiff argues that this transmittal is enough to give rise to tort liability. (Resp. at 9.) The Court disagrees.

In the Restatement, invasion of privacy contemplates a true invasion, such as "opening [] private or personal mail, searching [a] safe or [] wallet, examining [a] private bank account, or compelling [] by forged court order to permit an inspection of [] personal documents." Restatement (Second) of Torts § 652B cmt. b. All of these suggest the act of invading a space or virtual space which the defendant had no right to enter—not obtaining information with permission and then transmitting that information back to its owner via email. While Plaintiff may take issue with Defendant's security measures, she has not plausibly alleged an invasion of privacy and thus the Court need not reach the question of whether her Complaint satisfactorily alleges that the invasion would be "highly offensive to a reasonable person."

### C.  Breach of Fiduciary Duty

Plaintiff's final claim is also based on Defendant's transmittal of her personal files via email. Plaintiff argues that Defendant breached its fiduciary duty by emailing her files, while Defendant argues that it never owed a fiduciary duty to Plaintiff in the first place.

Defendant argues that "Arizona courts have declined to impose on attorneys 'a duty to exercise reasonable care to non-client third parties whose interests are directly adverse to those of the attorney's client.'" (Mot. at 7) (citing *Wetherill v. Basham*, 3 P.3d 1118, 1128 (Ariz. Ct. App. 2000)). Despite the logical appeal of this conclusion, Plaintiff argues that the relationship at issue is of the type of business transaction that gives rise to a fiduciary relationship. (Resp. at 10.) Plaintiff's argument is misguided.

First, Plaintiff relies on Arizona cases that have distinguished between a fiduciary relationship and a confidential relationship. The latter is something close to a fiduciary relationship but does not always involve the same responsibilities. And while "[t]here is no uniform practice among the courts in their use of the phrases," there is a difference between the two. *Rhoads v. Harvey Pubs., Inc.*, 700 P.2d 840, 847 (Ariz. Ct. App. 1984) (quoting *Condos v. Felder*, 377 P.2d 305 (Ariz. 1962)). A confidential relationship is characterized by "great intimacy, disclosure of secrets, intrusting of power, and superiority of position in the case of the representative," and is most often implicated in cases alleging constructive fraud. *Id.* (discussing the evidence necessary to "show a confidential relationship for constructive fraud."). This is the language that Plaintiff quotes in her Response, but it does not always implicate a classic fiduciary relationship, such as that between "guardian and ward, principal and agent, attorney and client." *Id.* Thus, Plaintiff asks the Court to consider her relationship with Defendant a confidential—not fiduciary—relationship.

Even if the Court found that a confidential relationship could give rise to a breach of fiduciary duty, Plaintiff's Complaint fails to plausibly allege that she and Defendant entered into a such a relationship. Arizona case law indicates that a confidential relationship exists only where one or both parties believed their interests to be aligned with the other party's. *See In re Guardianship of Chandos*, 504 P.2d 524, 526 (Ariz. Ct. App. 1984) (finding that a confidential relationship arises "by reason of . . . business [] relations that would reasonably lead an ordinarily prudent person in the management of his business affairs to repose that degree of confidence in another which largely results in the substitution of that other's will for his.").

For example, a client is entitled to rely on the advice of her counsel because she believes that her attorney is representing her interests. The same is true of a principal and agent relationship, as well as a guardian and ward, or any of the other examples enumerated by Arizona courts where the parties trust and rely on each other. But here, Plaintiff had no right to assume that Defendant, acting in its role as counsel to Plaintiff's former employer, had interests that were aligned with hers or had any duty to protect those interests. Put simply, "[a]n attorney has no duty to protect the interests of an adverse party for the obvious reasons that the adverse party is not the intended beneficiary of the attorney's services, and that the attorney's undivided loyalty belongs to the client." *Lewis v. Swenson*, 617 P.2d 69, 72 (Ariz. Ct. App. 1980) (internal citations omitted).

Because Plaintiff cannot plausibly allege a confidential—let alone fiduciary—relationship with Defendant, the Court will dismiss her claim for breach of fiduciary duty.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss (Doc. 54). All claims against Defendant Ritsema and Lyon, P.C. are dismissed. All surviving claims against separate Defendants remain pending.

Dated this 19th day of June, 2019.

Honorable John J. Tuchi
United States District Judge